In the Matter of the Writs of Ad Quod Damnum issued for the condemnation of the properties of Dr. Samuel G. Elbert and John W. Goodwin, situate on King Street, between Tenth and Eleventh Streets, in the City of Wilmington.

1. Eminent Domain—Proceedings—Writ—"Damages".

A writ of *ad quod damnum*, which commanded the sheriff to inquire of twelve impartial men the damages a landowner would sustain by the taking of his tract of land, is not defective in limiting the damages to the value of the land, but allows compensation for all the circumstances of detriment to the owner from the taking of the property; the word "damages" meaning all compensation the landowner is entitled to recover under the condemnation act, and the writ not being required to define the term "damages", that being defined in the act.

2. Evidence—Presumptions—Knowledge of Law.

In a proceeding to condemn land, it will be presumed that the sheriff and his jury had knowledge of the requirements of the act under which it was held; it being a public statute.

3. Eminent Domain—Review—Harmless Error.

In a proceeding to condemn land, the writ of *ad quod damnum* will not be quashed for failure to direct the jury to assess compensation for any particular circumstances of detriment to the owner besides the value of the land, where the owner was unable to show that he was prejudiced or injured by the alleged insufficiency of the writ, or that the jury failed to consider any of the elements of damage.

4. Eminent Domain—Proceedings—Discontinuance.

A landowner, dissatisfied with the damages awarded by the freeholders upon condemnation of his property, cannot, having sued out a writ *ad quod damnum*, discontinue the proceedings after verdict has been taken and a return made by the sheriff.

5. Eminent Domain—Assessment of Damages—Challenge to Juror.

A proceeding for assessment by a sheriff's jury of the damages caused by the condemnation of land, is not a civil suit, and the right of peremptory challenge does not exist, especially as the statute does not authorize the sheriff to summon more than twelve impartial men to determine the damages.

6. Eminent Domain—Assessment of Damages—Sheriff's Jury—Challenge.

A party to a proceeding for the assessment of damages in condemnation proceedings may, if present when the sheriff's jury is sworn, challenge any juror for cause; but it is not necessary for the sheriff to notify the parties of the time when the jury will be sworn, the failure not invalidating his return.

7. Eminent Domain—Assessment of Damages—Objections to Juror—Waiver.

Where a party not present when the sheriff's jury is sworn in a condemnation proceeding, participates in the trial without objection to the jury, he cannot, after the award, defeat the verdict and invalidate the return by showing that he had no opportunity to challenge; it being his duty to make his objection at the first opportunity in the progress of the cause.

8. EMINENT DOMAIN—ASSESSMENT OF DAMAGES—VERDICT—SETTING ASIDE.

The sheriff's return of the verdict rendered by the sheriff's jury in a condemnation proceeding will not be vacated because failing to show that the jury was sworn to perform the specific duty imposed by statute, merely reciting that they were sworn according to law; no special form of oath being required, and a return that the jury was sworn according to law showing a sufficient compliance with the statute.

9. EMINENT DOMAIN—ASSESSMENT OF DAMAGES—SHERIFF'S RETURN.

The report of the sheriff's jury to assess damages in condemnation proceedings is not bad for failure to show that the amount awarded was awarded as the damages for the taking of the property, where it recited that the jurors awarded to the owner of land proposed to be taken for the erection of a county building thirty-nine thousand dollars.

10. EMINENT DOMAIN—ASSESSMENT OF DAMAGES—CONSIDERATION BY JURY OF NOTES OF TESTIMONY.

That the sheriff's jury in condemnation proceedings considered, after the close of the case, notes of testimony taken by a stenographer, is no ground for vacating the sheriff's return, where it appeared that the stenographer was engaged at the request of the jury, after it became apparent to them that they could not remember or conveniently take notes of the testimony; a large part of it consisting of figures and calculations.

11. EMINENT DOMAIN—ASSESSMENT OF DAMAGES—CUSTODY OF SHERIFF'S JURY.

That the sheriff's jury, summoned to assess the damages in a condemnation proceeding, were allowed to separate after argument and before verdict, is no ground for vacating the sheriff's return, particularly as it appeared that the landowner, after the separation, consented to the introduction of further testimony.

12. EMINENT DOMAIN—ASSESSMENT OF COMPENSATION—AMOUNT OF AWARD—REVIEW.

The finding of the sheriff's jury, summoned to assess the damages in a condemnation proceeding, is made final by statute; and the court should not destroy the verdict by quashing the writ or vacating the return, except for clear and strong reasons.

13. EMINENT DOMAIN—ASSESSMENT OF DAMAGES—PROCEEDINGS OF JURY —MOTION TO QUASH.

Where it was not contended that proceedings by the sheriff's jury to assess the damages for land taken for public use were in fact irregular, neither the writ nor the sheriff's return will be quashed because not affirmatively showing a strict compliance with the law.

(*October* 10, 1913.)

PENNEWILL, C. J., and WOOLLEY, J., sitting.

*Robert H. Richards* and *John F. Neary*, (of *Ward, Gray* and *Neary*) for exceptants.

*William S. Hilles* contra.

Superior Court, New Castle County, September Term, 1913.

In the matter of the writs of *ad quod damnum* issued for the condemnation of the properties of Dr. Samuel G. Elbert and John W. Goodwin. On motions to quash the writs and vacate and set aside the sheriff's returns thereon.

Motions denied in both cases.

This proceeding was commenced and founded on *Chapter 201, Volume 27, Laws of Delaware*, entitled, "An Act to provide for the erection and furnishing of a new County Building for New Castle County," and the provisions applicable to the present discussion are founded on *Section* 4 of the act. This act provides that if The New Castle County Building Commission shall for any cause be unable to agree with the owner for the purchase of any land selected by the commission, any Judge of the Superior Court may issue a commission to five freeholders to view the premises and assess the damages which the owner would sustain by reason of the taking of his land for the purposes of the said act, taking into consideration all the circumstances of the benefit or detriment to result to such owner. It then provides that "Upon application of the said The New Castle County Building Commission or any owner or owners of such land to the Prothonotary of the Superior Court for New Castle County, he may issue out a writ of *ad quod damnum*, requiring the Sheriff in the usual form to inquire of twelve impartial men of his bailiwick of the damages as aforesaid and their report shall be final. * * * And upon confirmation of the said return or the return of the said writ of *ad quod damnum* and the payment or deposit of said damages as aforesaid, the said The New Castle County Building Commission shall cause to be recorded in the Recorder's office at New Castle County the application," etc.

The New Castle County Building Commission having selected the land of Samuel G. Elbert for the purpose of the building, applied for a commission to one of the Judges of the said Superior Court and the freeholders appointed by him assessed the damages which Elbert would sustain by the taking of his land. Both Elbert and the commission were dissatisfied with the amount of damages awarded by the commission, and each filed petitions in the office of the Prothono-

tary, applying for a writ of *ad quod damnum* under the provisions of the statute.

Writs were accordingly issued to the sheriff, being respectively numbers 32 and 33 to the September Term, 1913, of the said court, under which the sheriff, (after notices to the owner by letters to the effect that a jury selected by him would appear upon the premises of the owner at eleven o'clock in the morning of July 17, 1913, for the purpose of viewing the premises and assessing damages) inquired of a jury of the said damages, and made his returns of the writs on the first day of said September Term of said court, endorsing thereon, as follows:

"The within writ of *ad quod damnum* executed as per inquisition annexed."

On the same day counsel for the land owner came into court and filed a motion to quash the writ of *ad quod damnum* for reasons stated in the opinion and also filed exceptions to the return made thereon, in each case, for reasons appearing in the opinion, with a prayer that the same may not be confirmed by the court; and moved the court for a rule directed to the Commission, requiring them to show cause why the return should not be vacated and set aside. Subsequently the commission by their attorney moved the court that the motion to quash the said writs and the exception to the returns thereof be disallowed and discharged, for the reason that the court is without jurisdiction to hear or determine the same.

The court then proceeded to hear certain testimony and argument of counsel on the motion to quash the writs of *ad quod damnum* and exceptions to sheriff's returns thereon. At the argument counsel for the land owner coupled with his motion to quash, a motion for leave to abandon, discontinue and stay the writ which had been issued upon the petition of the land owner. The evidence heard by the court was to the effect (by the sheriff) that he served notices (admitted in evidence) as required in the execution of the writs; that he selected the jury at the sheriff's office, a day or two before they met on the premises of the land owner; that they were publicly sworn to try the cases, in the jury box, at the court room, about half-past ten on the day and before they

in company with him met on the premises of the owner; that after viewing the premises they came back to the court house; that the owner and his counsel were present before the jury; that they took part in the proceedings; that neither made any objections to any member of the jury and no request was made to, or any cause assigned for, challenge of any member of the jury; that he did not deny the right of challenge, and was assisted by his counsel; that the jury did not separate without his consent; (by Doctor Elbert, the owner) that the jury came to his premises about eleven o'clock; that they were neither drawn nor sworn there; that they went all over his premises he being present; that he went back to the court house with them; (by a stenographer) that he took the testimony stenographically, but was not sworn; that he believed he correctly set forth the testimony of the witnesses who were examined under oath; (by counsel for sheriff) that the jury was sworn by the sheriff in his presence, between ten and eleven o'clock on the morning of July seventeenth, in the jury box; that they subscribed their oaths; that counsel for the land owner was not present when they were sworn; that the owner and his counsel appeared before the jury and they did not make any objection to the personnel thereof, or to the manner of administering the oath, or its form; that they proceeded to trial without any such objection; that the sheriff was present all the while and presided at the trial; that the jury sat on the seventeenth day of July, after viewing the premises, but they did not sit on the following day because of the death of a son of one of the jurors, and adjourned to meet on a day in the following week; that on the last mentioned day they heard testimony and again separated; that they heard one witness by request on the following day, after which they retired and remained together until they reached their verdict; that the testimony on the first day was in relation to another property, and was not taken stenographically, but was so taken thereafter at the suggestion of a juror; that there was an argument on the second day; the jury decided to recess to a certain day, and they returned at that time; counsel for each side then volunteered to have summoned any witnesses the jury might want; that one

witness was summoned at the jury's request; that the jury then retired to its room and returned a verdict later in the day; that after retirement the jury did not separate; (by one of the jurors) that he was secretary of the jury; that all the jurors were sworn or affirmed in the various cases, on the morning of the first day; that the jury viewed the different properties until about twelve o'clock, and then re-assembled in this court room; that counsel for the commission and for the owners examined witnesses at some stage of the proceedings; after hearing the testimony the jury retired to the jury room, but did not agree and recessed until the next day, when one witness was summoned and testified at the request of the jury; that the jury then retired to the jury room and there remained until the verdicts were made up and signed.

The court in the following opinion denied the motion of the land owner to quash the writs and also his motion to discontinue, stay or abandon the writ issued upon his petition, and also overruled all the exceptions to the sheriff's return and confirmed the return.

Pennewill, C. J., delivering the opinion of the court:

A motion was made by Samuel G. Elbert, the petitioner in the matter of the writ of *ad quod damnum* issued for the condemnation of his property, to quash said writ for the following reason, viz.:

"That the writ is defective in that it does not follow the statute, because it fails to direct the jury to take into consideration all the circumstances of benefit and detriment to result to the owner from the taking of the property sought to be condemned."

It is insisted that even where all the owner's land is taken, as in the present case, he may be entitled as "compensation", to more than the intrinsic value of the land.

The correctness of this proposition is not questioned if the statute authorizing the condemnation directs the jury "to take into consideration all the circumstances of benefit and detriment."

[1] But it does not follow that the *writ* is defective and void

because it does not contain such words, and fails to so direct the jury.

The writ commands the sheriff to inquire of twelve impartial men, under their oaths and affirmations, of the damages the owner will sustain by reason of the taking of the premises. It will be noted that the direction in the writ is, not that the jury shall inquire of the *value of the land taken*, but of the damages the owner will sustain by reason of the taking of his land.

We think the word "damages", as used in the writ, means all the damages or compensation the landowner is entitled to receive under the act.

It is not necessary that the writ should define the word, that is done by the statute. The writ may not use such language as will narrow or restrict the damages, but it is permissible and proper to use such general word or words as will embrace all that the statute intends, and enable the landowner to prove the same. The owner was not precluded from doing this by anything contained in the writ, and presumably he did prove all the damages he was able to prove under the law; certainly he was not prevented from doing it by anything contained in the writ.

[2] The act under which the condemnation proceedings were had was a public act, and it will be assumed that the sheriff and his jury in the performance of their duty had knowledge of its requirements so far as their duties were concerned. They are supposed to know the requirements of the law under which they act.

[3] There is one fact that has had some weight with the court in determining the sufficiency of the writ, and that is the utter failure of the landowner to show or intimate that he has been in anywise prejudiced or injured by its alleged insufficiency. For all that appears to the court the jury may have taken into consideration, not only the value of the land, but also *all* the detriment the owner would sustain by the taking of his land. Nothing to the contrary is shown or alleged. In no way does it appear that he was deprived of the right to prove such damages, by the language of the writ, or that he has suffered any injury at all in consequence thereof. There is not only a failure to prove such facts;

there is not even an averment of any such injury, or of the deprivation of any such right.

For the reasons given we think the writ sufficient, and the motion to quash the same is overruled.

It may be stated as a matter of some significance that the writ of *ad quod damnum* issued by the landowner and the one issued by the commission are identical in the parts complained of by Elbert. One of those writs may be considered his own, and the prothonotary in framing it followed exactly the language employed by the owner in his petition for said writ. Realizing the inconsistency of his position in asking the court to quash his own writ, he seeks to discontinue the proceeding so far as he is concerned.

[4] All we desire to say about the application to discontinue is that the landowner cannot discontinue the proceeding at this stage of the case. After a verdict has been taken, and a return made by the sheriff to the court upon the writ, the landowner will not be permitted to abandon his writ and thereby elect to take the larger damages awarded by the freeholders. Such permission would enable any landowner, dissatisfied with the damages awarded by the freeholders, to take out his writ of *ad quod damnum*, and if the verdict of the jury is less than the award of the freeholders, he may accept the larger amount. Such election would, in our opinion, be not only unreasonable, but entirely unwarranted by the law.

The landowner Elbert not only moved that the writ be quashed, but filed exceptions to the return thereon, and asked that the same be vacated and set aside for the following reasons:

1. That he was deprived of his right to challenge jurors selected in the impaneling of the jury required to be summoned under the writ.

2. That the return fails to show that the jury was properly sworn.

3. That the return fails to show that the jury took into consideration all the circumstances of benefit and detriment to result to the owner from taking his land.

4. The consideration by the jury, after the close of the case, of the notes of testimony made by stenographer Guyer.

5. That the jury separated after the close of the evidence and argument, and before they rendered their verdict.

There were many exceptions filed, but counsel for Elbert, in his argument and brief, grouped them as stated, and for brevity, as well as convenience, we will consider them under the same classification.

The first reason assigned for vacating the return is that the landowner was deprived of his right to challenge jurors selected and impaneled under the sheriff's writ.

It is contended that a condemnation proceeding under the statute is a civil suit, and that under the law of this state, in every such suit each party has a right to challenge any juror for cause, and may also challenge a certain number peremptorily, or without cause.

[5]  We do not regard the proceeding in question as a civil suit within the meaning of the statute which gives the right of peremptory challenge; and inasmuch as such right is given only by statute, it follows that it did not exist in this case.

The sheriff was commanded by the writ "to inquire of twelve impartial men  *  *  *  under their oaths and affirmations of the damages which the landowner would sustain by reason of the taking of his lands, and that he and the jury by him summoned and qualified should make an inquisition," etc.

The statute provides for a sheriff's jury of twelve men, and does not require the summoning of more than that number. The jury that is to award damages under the statute is not only summoned, but also selected by the sheriff, and by him alone. The right of challenge without cause does not and cannot exist.

[6]  It may be conceded that a party to the proceeding might challenge any juror for cause if present at the time the jury is sworn, but it is not the usual practice to notify the parties of the time when the jury would be sworn, and failure to do so would not invalidate the return.

[7]  If a party is not present at the time, and afterwards appears and takes part in the proceedings, participates in the trial, without objection to the jury previously selected and sworn, he cannot, after the award is made defeat the verdict and invalidate

the return by showing that he had no opportunity to challenge. It was his duty to make his objection at the first opportunity in the progress of the case, and failing to make any objection until after verdict, it will be assumed that he was content, and had no valid objection to make.

We think the law upon the point is correctly stated in *Thompson and Merriam on Juries*, at § 275, as follows:

"No rule is better settled than that if a party to the cause have knowledge of any circumstances tending to disqualify particular jurors from serving therein, he cannot hold back those facts until after verdict, and then produce them in support of a motion for a new trial."

But in the present case it is not shown or even alleged that there was any cause for challenge, and we are clearly of the opinion that the return should not be vacated because the landowner was not notified of the time the jury would be impaneled and sworn, he having participated in the proceedings without objection to any member of the jury, and not yet having shown or averred any cause why any juror should not have served.

[8] It is contended, by the second reason above stated, that the return should be vacated because it fails to show that the jury was properly sworn.

The return recites that the jury was sworn or affirmed according to law, but does not show that it was sworn to perform the specific duty imposed by the statute.

The landowner claims that the jury is a common-law jury, and must, therefore, be sworn to perform the particular duty required by the statute.

No specific form of oath is prescribed by the statute.

If the statute prescribed a particular or certain form of oath, it would have been necessary to adopt and follow such form, and it may be that the return would have to show that fact; at least the court would require satisfactory evidence of that fact before confirming the return. But in the absence of any such provision in the statute, we think the recital in the return that "the jury was sworn or affirmed according to law" is a sufficient compliance with the terms of the statute. Certainly those words do not

negative, neither are they inconsistent with, the fact that the jury was sworn to perform the particular duty they were required to perform. In fact, they are entirely consistent with the fact that they were so sworn, and in the absence of proof to the contrary it may be assumed that "sworn or affirmed according to law" means sworn to perform the duties required by the law.

It is not denied that the jury was sworn as stated in the return. The evidence before the court shows the jurors were so sworn. It is not shown or alleged that they were not sworn to perform the specific duty imposed by the statute and writ. The only contention is that the writ does not expressly show they were so sworn.

We are satisfied that confusion and surprise would be caused if we were to hold that the return on an *ad quod damnum* writ must show that the jurors were sworn to perform the specific act mentioned in the statute or writ, because in all cases or matters out of court where the jurors, freeholders, commissioners, and inquisitors are required to perform specific duties, and make return of their proceedings, such a recital as is contained in the present return has been invariably made. We can see no difference in principle between this case and the others to which we have referred respecting the matter now under consideration.

Reason No. 3 need not be considered here at all, because the motion to quash the writ was based upon the same proposition, and has therefore been determined in passing upon the sufficiency of the writ.

[9] Before considering the fourth reason assigned by the landowner for vacating the return, we will refer briefly to his sixteenth exception. This was barely mentioned at the argument, and we are inclined to believe little, if any, reliance is placed upon it.

This exception is: "That the report of the jury does not specifically show that the amount awarded to Samuel.G. Elbert was awarded as the damages for the taking of his property for alleged public use."

In respect to this exception it is only necessary to quote from the return the following:

"We, the undersigned jurors, duly summoned under the annexed writ, do award to Samuel G. Elbert, the owner of the lands and premises proposed to be taken, appropriated and used by the New Castle County Building Commission acting in behalf of New Castle County, for the purpose of the erection of a county building, thirty-nine thousand dollars."

It is difficult to see how language could be employed that would more clearly show that the award of said sum was made for property proposed to be taken for public use. It is true the word "damages" was not used, but it is manifest that the return is the evidence of the execution of a writ which required the jury to fix the damages for the land proposed to be taken, and the award mentioned in the return must, therefore, be the damages which the writ commanded the jury to inquire of.

[10] We will now consider the fourth reason assigned by the landowner for vacating the return, viz.:

The consideration by the jury, after the close of the case, of the notes of testimony taken by the stenographer, Guyer.

According to the evidence presented to the court, Mr. Guyer was engaged to take the testimony at the request of the jury after a number of witnesses had been heard, and it had become apparent to the jury that it would be impossible for them to remember, or conveniently make notes of, the testimony, a large part of which consisted of figures, estimates, calculations, etc.

Mr. Guyer admitted that he was not sworn, but he testified before the court that the notes he made, and which were given to the jury at their request, were a true and correct statement of the testimony given by the witnesses. There is nothing before the court showing the contrary.

We do not know of any rule of law, or of any established practice, that would prevent access by such a jury to the notes so taken the original testimony having been heard by the jury from the witnesses themselves, and the notes being made and given to the jury at their request.

[11] The last objection to the return is based on the alleged fact that the jury separated after the close of the evidence and argument, and before they rendered their verdict.

While it is true that the jury did separate after the argument and before verdict, it appears from the testimony produced before the court that one witness (Scott) testified after the argument, and that there was no separation after Scott's testimony was heard, until after verdict. It also appears that after the argument was concluded the jury expressed a desire to hear further testimony, and thereupon counsel for both landowners and the sheriff consented that other witnesses might be heard, and expressed a willingness to subpoena any the jury might wish to hear. This is not denied by the landowner.

We do not know of any law that would prevent a jury in this state from separating at any time before verdict by the consent of the officer conducting the trial; nor is there any practice that would disallow a separation at any time before the jury is charged by the court. So that, even if the separation was not with the consent of the landowner, we think it would not invalidate the return when it was with the consent of the sheriff who conducted the trial and had full charge of the proceeding.

The motion to vacate and set aside the sheriff's return is refused, and said return will be confirmed.

In disposing of the motion to quash the writ, as well as the motion to vacate the return, the decision of the court is based upon the statute which authorized the proceedings under consideration. We have not regarded it as necessary or profitable to consider the history of the writ of *ad quod damnum*, or its peculiar functions at different times and in different jurisdictions. The statute before us was the authority for its issuance in this case, and very clearly prescribes the duties to be performed thereunder.

Two important and undisputed facts have had considerable weight with the court in the determination of the several questions raised by the landowner, and they are:

[12] 1. That in no event is the court permitted to question, or in any way interfere with, the amount of damages awarded. The finding of the jury is made final by the statute. Such being the case, we have felt that the court should not destroy the verdict by quashing the writ, or vacating the return, except for rea-

sons that were clear and strong. At least, the reasons must not be of an extremely technical character, as we think they are in the present case.

[13] 2. That it is not shown or alleged that the landowner was prejudiced or injured in his property rights in the slightest degree by the commission or omission of any of the acts or things complained of. It is not contended that the proceedings were in fact irregular or unlawful, but simply that the writ and return do not affirmatively and conclusively show a strict compliance with the law.

The motion to quash the writ of *ad quod damnum* made in the *Goodwin case* is likewise overruled, as well as the motion to vacate the sheriff's return, and said return will be confirmed, it being understood and agreed that the same orders should be made in both the *Elbert* and *Goodwin cases*.